GEORGE T. BISEL CO. v. BENDER et al.

(Circuit Court, N. D. New York. July 17, 1911.)

COPYRIGHTS (§ 85*)—INFRINGEMENT—EVIDENCE—INJUNCTION.

    In a suit for infringement of a copyright, evidence of copying held suf-
    ficient to justify continuance of a temporary injunction against the sale
    of defendant's work until final hearing.

    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 78; Dec. Dig.
    § 85.*]

In Equity. Suit by George T. Bisel Company against Matthew
Bender and others, trading as Matthew Bender & Co., and De Witt C.

Moore. On application to continue a temporary injunction until final hearing. Granted.

Suit to restrain infringement of copyrighted book "Interstate Commerce Act," Drinker, in two volumes with a supplement making three volumes, entitled "A Treatise on the Interstate Commerce Act, and Digest of Decisions Construing the Same," copyrighted as to the first two volumes in March, 1909, by George T. Bisel Company. Henry S. Drinker, Jr., is the author thereof. The defendant, De Witt C. Moore, is the author, and defendant Matthew Bender & Co., the publisher, of a work in one volume entitled "The Law of Interstate Commerce and Federal Regulation thereof, including the Mann-Elkins Amendments of 1900, and the Sherman Anti-Trust Act of 1890," copyrighted in 1910, by Matthew Bender & Co.,

Risley & Love (Samuel Dickson and Henry S. Drinker, of counsel), for complainant.

Melvin Bender, for defendant M. Bender & Co.

De Witt C. Moore, in pro. per.

RAY, District Judge (after stating the facts as above). By comparing the alleged infringing book, Moore on "Interstate Commerce," with the book, "The Interstate Commerce Act," Drinker, vol. 1, it is evident that Moore in effect copied the general style of treating the subject adopted by Drinker although he had much new matter. Moore follows the chapter headings and method of treating the subject adopted by Drinker, commencing with chapter 4 of Moore and chapter 2 of Drinker. Moore in chapter 1 treats of "What constitutes commerce," in chapter 2 of "Federal regulations of interstate commerce," and in chapter 3 of "Nature of interstate commerce." Drinker in volume 1 gives the acts and then in part 1, chapter 1, treats of "the substantive requirements of the act." Then chapter 2 is headed "Scope of the act, purpose, rules of construction applicable, general considerations." Subheadings are:

19. Expressions by Commissioners and Courts as to the Purpose of the Act.

20. General Rules of Construction Applicable to the Act.

21. Judge Jackson's Dictum in the Kentucky Bridge Case.

22. The Act did not Create New Powers in the Carriers.

23. The Act Applies only to the Carrier's Duties toward Shippers and Passengers.

24. Duty to Provide Adequate Service and Facilities—Through Routes, Joint Rates and Switch Connections.

25. Charges for Incidental Services.

Moore in chapter 4 heads the chapter "Purpose of the interstate commerce act." His subheadings are:

Section

16. Scope and effect of the Act.

17. Construction of the Act.

18. Rights and powers of carriers not enlarged by the Act.

19. The provisions as to discriminations and preferences apply only to the carrier's duty as a common carrier.

20. Carrier's duty to provide reasonable facilities and adequate service.

21. All interstate commerce not included.

Going through these chapters respectively we find the following subheadings:

| Drinker. | Moore. |
|---|---|
| 19. Expressions by Commissioners and Courts as to the Purpose of the Act. | § 16. Scope and effect of the Act. |
| 20. General Rules of Construction Applicable to the Act. | § 17. Construction of the Act. |
| | § 18. Rights and powers of carriers not enlarged by the Act. |
| 21. Judge Jackson's Dictum in the Kentucky Bridge Case. | § 19. The provisions as to discriminations and preferences apply only to the carrier's duty as a common carrier. |
| 22. The Act did not Create New Powers in the Carriers. | |
| 23. The Act Applies only to the Carrier's Duties toward Shippers and Passengers. | § 20. Carrier's duty to provide reasonable facilities and adequate service. |
| 24. Duty to Provide Adequate Service and Facilities—Through Routes, Joint Rates and Switch Connections. | § 21. All interstate commerce not included. |
| 25. Charges for Incidental Services. | |

This is a fair illustration of what follows in the succeeding chapters.

Take the same chapters above referred to, and we find great similarity of language and expression and substantially the same citation of cases with the same errors in reference almost without exception. Overruled and reversed cases are in many cases cited by Moore as authority without any reference to such facts, and this is true when the change in the decision of the case was after the publication of Drinker and prior to that of Moore. Errors in spelling names and in reference to pages are identical in numerous instances.

In volume 1, Drinker, p. 67, he says:

"The purpose of the Act with regard to its effect on competition between railroads was thus stated by Commissioner Veazey: 3 'To preserve legitimate competition between public carriers, and to prevent that competition which is illegitimate, that is, competition which is not contrary to the public interest, or in other words, opposed to the public welfare, is precisely that which among other things, the law undertakes to accomplish.' "

The reference "3" of Drinker in a note is:

3 "Gerke Brewing Co. v. Louisville & N. R. Co., 5 Interst. Com. Comm. R. 596, 606."

This is a misquotation, does injustice to Commissioner Veazey, and human intelligence is startled to find one of the commissioners declaring that "illegitimate competition" is that competition which is not contrary to the public interest and not opposed to the public welfare; that is, competition which is in the interest of the public and not opposed to the public welfare. This is a new and a somewhat startling definition of "illegitimate competition," and necessarily involves the proposition that all competition which is contrary to the public interest and opposed to the public welfare is legitimate. What Commissioner Veazey declared in the case cited is:

"To preserve legitimate competition between public carriers, that is, competition which is not contrary to the public interest and to prevent

that competition, which is illegitimate, or in other words, opposed to the public welfare is precisely that which," etc.

If Moore had read the case before or while writing his work he would not have thus misquoted and misrepresented Commissioner Veazey, and given aid and encouragement to Drinker in thus confusing, if not confounding, the legal fraternity. But on page 37 of his work (without giving Drinker credit) he blindly copies the exact words found in Drinker and in a note (15) cites the same case. Drinker threw the responsibility for the statement on Commissioner Veazey, by purporting to quote but in fact misquoting, while Moore does not purport to quote, but adopts this erroneous definition and statement as his own, and assumes the responsibility, thus doing himself injustice. Instances of this kind where infringement by copying is charged are persuasive evidence, as they tend to show mere copying, an absence of independent examination and of study and reflection.

It is easy to account for the misquotation in Drinker as that of the copyist who omitted and then inserted the omitted words in the wrong place, but Moore undoubtedly copied, as he would never have made the statement on reflection or an examination of the case cited.

I am of the opinion from the books and affidavits presented that Moore took volume 1 of Drinker and from the point indicated followed him, changing the language generally, but not always, and making some additions, and using his references without much, if any, independent examination. There is no probability or possibility that the one book would be mistaken for the other, but Moore, being later and in one volume, would be liable to supersede Drinker to quite an extent. There is no evidence of much independent thought or reasoning in either work. Both writers have confined themselves substantially to a recital of what the various courts have held or indicated on the various subjects. When two writers on the same subject follow this course the result is a sort of digest of decisions, and there is liable to be much similarity of statement, and in numerous instances a use of the same language and expressions as taken from the syllabi of the cases or from the language of the judges. Each writer has the undoubted right to copy the syllabi and extracts from the opinions, as between themselves, but where one has made an abstract of the one or the other, or of both, partially or wholly in language of his own, the other has no right to copy it into a work of his. In this case there are not many instances where Moore has copied Drinker, but his language is so clearly like that of Drinker, there being minor changes only, that one cannot escape the conclusion that Moore did vastly more than read Drinker, the decisions, and other works, and then frame a chapter or a paragraph of his own. It is also shown that in a number of instances Drinker copied from prior writers on the same subject, and as Moore has the same language in his book the charge is made that this is evidence of infringement by mere copying. To my mind this is no evidence of any wrong, but is evidence of mere copying in connection with the other facts. Moore had the same right to copy from prior authors, from the opinions of judges, and from the headnotes of reported cases that Drinker had. Drinker

could not pre-empt the field in these regards. But I think the inherent evidences are that Moore went beyond this—quite far beyond what he had a right to do in gathering information from Drinker and using it in writing his book. If Moore had done nothing beyond following the general arrangement of subjects adopted by Drinker I should fail to find infringement. Moore had the same right as Drinker to write on this subject. If Drinker has adopted the best and most orderly and connected mode of treating these subjects, step by step, I know of no reason why Moore should resort to a disorderly and disconnected mode of treating them. Drinker, we will assume, taught Moore and others the best and most orderly mode of treating the subject. Must Moore be charged with infringement if he avails himself of the knowledge thus gained? I think not. There has been time enough since the bringing of this action in which to have taken the evidence of all the witnesses, where cross-examination probably would have thrown light on most if not all the disputed questions, and submit the case on final hearing. Cross-examination is one of the surest modes of ascertaining the exact truth. However, this has not been done. As the case stands, on the affidavits presented, I am of the opinion the preliminary injunction should be continued until the determination on final hearing. Moore claims, in substance, that he did in fact examine all the cases and that he directed the omission of many cases and the substitution of others, but that his stenographer or clerks failed to follow instructions. But can he be permitted to avoid the charge of infringement by placing the responsibility for the copying on his agents and servants? Moore also failed to properly treat the subject in view of the amendments. In certain matters where the amendments, subsequent to Drinker, had changed the law, Moore ignored them and wrote, in imitation of Drinker, as if they had not been made. As a work written or purporting to have been written after the amendments it ought to be revised and corrected before being placed on the market. Of course this court cannot assume to continue the injunction for the protection of the legal profession. It is the Bisel Company which complains, but the general public will not suffer by the action of the court in continuing this injunction until a final hearing where all disputed points may be fully explained.

There will be an order accordingly.